```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 17-4391 (DSD/KMM)
```

Doris Rogers,

       Plaintiff,

v.                                                     **ORDER**

Eaton Corporation,
Eaton Corporation Health
and Welfare Administrative Committee,
and Eaton Corporation Disability
Plan for U.S. Employees,

       Defendants.

      Michael J. Kemmitt, Esq. and Fields Law Firm, 9999 Wayzata Blvd., Minnetonka, MN 55305, counsel for plaintiff.

      Patrick O'Keefe Peters, Esq., Jennifer A. Nodes, Esq. and Jackson Lewis P.C., 150 South Fifth Street, Suite 3500, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the cross-motions for summary judgment by plaintiff Doris Rogers and defendants Eaton Corporation, Eaton Corporation Health and Welfare Administrative Committee, and Eaton Corporation Disability Plan for U.S. Employees (collectively Eaton). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies Rogers' motion and grants Eaton's motion.

**BACKGROUND**

This ERISA dispute arises out of Eaton's termination of Rogers' long-term disability benefits. Eaton is a power management company, headquartered in Dublin, Ireland; Rogers worked for Eaton

at its Searcy, Arkansas location as a hydraulic tester. Nodes Decl. Ex. A-3 at 228.

Rogers suffers from degenerative disc disease in the cervical and lumbar spine. Id. at 24. In April 2014, Rogers underwent back surgery. Id. at 22. Rogers' disease and resulting surgery reduced her shoulder mobility and walking and standing capacity. Id. at 22-24.

As an Eaton employee, Rogers was covered under a long-term disability insurance policy (Plan). Id. Ex. A-1 at 30-49. Under the Plan, a claimant has a covered disability when:

> During the first 24 months, including any period of short term disability, [she is] totally and continuously unable to perform the essential duties of [her] regular position with [Eaton], or the duties of any suitable alternative position with [Eaton];
>
> Following the first 24 months, [she is] totally and continuously unable to engage in <u>any occupation</u> or perform <u>any work</u> for compensation or profit for which [she is], or may become, reasonably well fit by reason of education, training or experience — at Eaton or elsewhere.

Id. at 11 (emphasis added). Eaton acted as the Plan administrator and funder, and Segdwick CMS acted as the Plan claims administrator. Id. at 25-26.

In March 2014, Rogers applied for long-term disability benefits under the Plan. Id. Ex A-3 at 13. In September 2014, Sedgwick approved Rogers' application because her back and shoulder injuries precluded her from performing her regular, or a suitable

alternative, positon with Eaton.  Id. at 22-27.  In October 2014, the Social Security Administration awarded Rogers disability insurance benefits.  Id. at 229-232.

In March 2016, Sedgwick re-evaluated Rogers' long-term disability coverage under the Plan's post twenty-four month, "any occupation" standard.  Id. at 84-86, 216-17.  As part of that evaluation, Sedgwick requested an independent medical examination, functional capacity evaluation, transferable skills analysis, and labor market survey.  Id. at 84, 184.  The independent medical evaluation, performed by Dr. William Blakenship, found that Rogers could work "in the medium physical demand level with occasional reaching overhead."  Id. at 85.  The transferable skills analysis identified six occupations that could accommodate Rogers' work limitations: electronics tester, machine operator, product assembler, production assembler, small product assembler, and security guard.  Id.  The labor market survey identified two employers within fifty miles of Rogers' home that would allow her to perform those occupations within her limitations.  Id. at 86.  As a result, Sedgwick terminated Rogers' long-term disability benefits.  Id.

On May 2, 2016, Rogers appealed Sedgwick's initial termination.  Id. at 88-92.  In support, Rogers submitted updated medical records and test results.  Id. at 92-93. Sedgwick referred Rogers' medical records and the independent medical examination,

transferable skills analysis, labor market survey, and an updated functional capabilities evaluation to Dr. Victoria Knoll, a third-party independent reviewer, for a report and recommendation. Id. at 97, 157-62.

Dr. Knoll concluded that Rogers could perform occupational duties consistent with the independent medical examination and functional capabilities evaluation. Id. On August 22, 2016, Sedgwick upheld its termination of Rogers' long-term disability benefits. Id. at 85-87.

On October 18, 2016, Rogers appealed Sedgwick's termination to Eaton.[1] Id. at 110-11. As part of its evaluation, Eaton referred the entire record to the Medical Review Institute of America (MRIA) for an independent medical review. Id. at 20. On January 31, 2017, Dr. William Tontz completed the independent review for MRIA, and concluded that Rogers was not disabled under the Plan's "any occupation" standard.[2] Id. at 168-177.

Following Dr. Tontz's review, Rogers submitted a personal statement and additional medical records from her primary care physician and pain management specialist. Id. Ex. A-2 at 112. Eaton accepted the records and submitted them to Dr. Tontz for an

---

[1] Under the Plan, a claimant can appeal directly to Eaton for a final review.

[2] Dr. Tontz noted that the Social Security Administration's disability award had no bearing on his determination for long-term benefits under the Plan.

updated review.  Id.  On June 30, 2017, Dr. Tontz again found that Rogers was not disabled under the Plan's "any occupation" standard.  Id. Ex. A-3 at 171.

On February 3, 2017, Eaton upheld Sedgwick's termination of Rogers' long-term disability benefits.  Id. at 16-23.  On September 26, 2017, Rogers filed the instant ERISA suit, alleging that Eaton abused its discretion in terminating her long-term disability benefits.  Both parties now move for summary judgment.

**DISCUSSION**

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ....").

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party.  Id. at 255.  The nonmoving party, however, may not rest upon mere

5

denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II. Denial of Benefits

Under ERISA, a plan participant may bring a civil action to "recover benefits due to [her] under the terms of [her] plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties agree that the Plan gives Eaton discretion to construe the Plan terms. Therefore, the court reviews Eaton's benefits termination under an abuse of discretion standard. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Under this standard, a plan administrator's denial of benefits is reversed only when the decision is arbitrary and capricious. Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011). That is, the court must uphold Eaton's decision if it was supported by substantial evidence. McGee v. Reliance Standard Life Ins. Co.,

6

360 F.3d 921, 924 (8th Cir. 2004). Substantial evidence means more than a scintilla, but less than a preponderance, of relevant evidence that a reasonable person might accept as adequate to support a decision. Waldoch v. Medtronic, Inc., 757 F.3d 822, 832 (8th Cir. 2014). The court will not disturb a plan administrator's decision supported by substantial evidence even if a different or more reasonable decision could have been made. Id. at 833.

Furthermore, when reviewing a denial of ERISA benefits, a court must focus on the evidence available to the plan administrator at the time of its decision and may not admit new evidence or consider post hoc rationales. See Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir. 1998). In doing so, the court reviews the record as a whole and Eaton's final determination. See, e.g., Whitley v. Standard Ins. Co., 815 F.3d 1134, 1141 (8th Cir. 2016) (internal citation omitted) (holding that the "court reviews the claim administrator's final decision to deny a claim, rather than the initial denial that was reconsidered during the internal appeal.").

### A. Conflict of Interest

Rogers first argues that Eaton has a conflict of interest under the Plan because it both pays benefits and adjudicates appeals. If the plan administrator or fiduciary having discretion is operating under a conflict of interest, that conflict must be weighed as a "[f]actor in determining whether there is an abuse of

discretion." Firestone, 489 U.S. at 115. "The conflict of interest ... should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008). Nevertheless, when the plan administrator uses independent medical consultants to review claims, any conflict is mitigated. See, e.g., Whitley, 815 F.3d at 1140 (finding that when the plan administrator hires independent medical consultants to review claims, the conflict of interest is reduced "to the vanishing point."). Here, to the extent Eaton is conflicted under the Plan as both funder and adjudicator, the record shows that it took the necessary measures to mitigate the conflict.

Eaton referred Rogers' medical record to MIRA for third-party review. Dr. Tontz, who performed the review, was affiliated with that organization, not Eaton. Nodes Decl. Ex. A-3 at 176-77. Moreover, Dr. Tontz certified that he was not paid for a specific review outcome. Id. at 176. Dr. Tontz considered the entirety of the record and applied that evidence to the Plan's long-term disability benefit criteria. Id. at 163-77. As such, there is no evidence that Dr. Tontz's findings were biased in Eaton's pecuniary favor or that Eaton has a history of biased claims administration.

**B. Consideration of the Evidence**

Rogers next argues that Eaton improperly discounted the findings of her treating medical providers. However, in an ERISA claim, the plan administrator is not required "to accord special weight to the opinions of a claimant's physician." Weidner v. Fed. Express Corp., 492 F.3d 925, 930 (8th Cir. 2007). A plan administrator is free to rely on the reports of consulting, non-examining physicians over the reports of treating physicians. Id. Indeed, a plan administrator has no "discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Id.

Here, the record shows that Eaton accepted all of Rogers' medical records and tests, but was more persuaded by Dr. Knoll's and Dr. Tontz's findings, as well as the independent medical examination, transferable skills analysis, and functional capabilities evaluation. That evidence provides more than a scintilla of reliable evidence that Rogers could work in some occupation, and, as a result, that she was not continuously disabled under the Plan. Accordingly, Eaton did not abuse its discretion in terminating Rogers' long-term disability benefits.

**C. Social Security Disability Determination**

Finally, Rogers argues that Eaton's decision to terminate her long-term benefits was arbitrary and capricious because it failed to provide a sufficient explanation as to why its decision differed

from the Social Security Administration's disability finding.  The law is clear, however, that an "ERISA plan administrator or fiduciary generally is not bound by a [Social Security] determination that a plan participant is disabled."  <u>Jackson v. Metro. Life Ins. Co.</u>, 303 F.3d 884, 889 (8th Cir 2002).  Here, there is no evidence that the Social Security Administration's disability finding applied the same criteria as the Plan or took into consideration the same independent medical examination, functional capacity evaluation, transferable skills analysis, and labor market survey.  In addition, it is unlikely that the Social Security Administration and Eaton examined the same medical records given that the former awarded benefits in October 2014, and the latter's final benefit termination was issued in June 2017.  Therefore, Eaton did not abuse its discretion in explaining why it did not follow the Social Security Administration's disability finding.

**CONCLUSION**

Because Eaton did not abuse its discretion in terminating Rogers' long-term disability benefits, its motion for summary judgment must be granted.  Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   Eaton's motion for summary judgment [ECF No. 27] is granted;

2.   Rogers' motion for summary judgment [ECF No. 36] is denied; and

3.   The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  October 9, 2018

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court